UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Application of Leandro and Thiago Camargo Ramos,<br><br>Applicants,<br><br>For an Order Pursuant to 28 U.S.C § 1782 Directing Discovery for Use in Proceedings in Brazil | 1:24-MC-00413-LTS |

<u>Memorandum Order</u>

Leandro and Thiago Camargo Ramos (the "Ramos Brothers" or "Applicants") apply for an order under 28 U.S.C. section 1782 authorizing them to take discovery from Itaú BBA USA Securities, Inc. ("Itaú USA"). (Docket entry no. 1 ("Application").) Itaú USA opposes the application. (Docket entry no. 13.)

The Court has subject matter jurisdiction under 28 U.S.C. section 1782(a)[1] and 28 U.S.C. section 1331. The Court has carefully considered the parties' submissions—(docket entry no. 1 ("Ramos App."); docket entry no. 2 ("Ramos Mem."); docket entry no. 13 ("Itaú USA Opp."); docket entry no. 18 ("Ramos Reply"))—and, for the following reasons, the Ramos Brothers' application is granted in part and denied in part.

---

[1] Most courts have described section 1782(a) as a jurisdictional provision, and not merely one that authorizes the use of particular power. <u>See</u> Guo v. Deutsche Bank Sec. Inc., 965 F.3d 96, 102 (2d Cir. 2020) (describing the statutory requirements of section 1782 as "jurisdictional" (internal quotation marks omitted)).

BACKGROUND

The following background facts are taken from declarations submitted by the parties. (See docket entry no. 3 ("Neto Decl."); docket entry no. 14 ("Nunes Decl."); docket entry no. 19 ("Neto II Decl.").)

The Kabum Deal

In 2019, brothers Leandro and Thiago Camargo Ramos decided to sell their e-commerce company, Kabum, and hired Banco Itaú BBA S.A. ("Itaú BBA") to advise them on the sale. (Neto Decl. ¶ 6.) Ubiratan Machado, the managing director of Itaú BBA's M&A division, led the sale process. (Id. ¶ 7.)

On July 15, 2021, the Ramos Brothers agreed to sell Kabum to Magazine Luiza S.A. (Id. ¶ 11.) Under the deal, the Ramos Brothers would receive R$3.5 billion in total consideration—R$1 billion in cash and R$2.5 billion in Magazine Luiza stock. (Id.)

The Alleged Conflicts of Interest

The Ramos Brothers allege that Itaú BBA and Machado had numerous, undisclosed conflicts of interest with respect to the Kabum deal, and they bring this section 1782 action "to seek evidence in aid of proceedings they intend to bring in Brazil to hold Itaú [BBA] and Machado responsible for their breaches of duty and conflicts of interest." (Ramos Mem. at 2.) The Application and supporting declarations cite the following circumstances.

First, on July 15, 2021, the same day that the Ramos Brothers executed the Kabum purchase agreement, Magazine Luiza conducted a follow-on offering of 150 million shares for nearly R$3.5 billion. (Neto Decl. ¶ 12 & n.1.) The Ramos Brothers aver that Magazine Luiza's follow-on offering diluted and devalued the Magazine Luiza stock consideration that they received as part of the Kabum deal. (Ramos Mem. at 5; see Neto Decl.

¶ 13.)  Furthermore, the Ramos Brothers did not learn about the follow-on offering until hours before they were about to sign the purchase agreement.  (Neto Decl. ¶ 12.)  According to the Ramos Brothers, they executed the purchase agreement only after Itaú BBA had reassured them that the follow-on offering would be beneficial to them.  (Id. ¶ 12.)  At the time, however, the Ramos Brothers did not know that Itaú BBA was the lead coordinator for the follow-on offering or that Itaú USA led coordinating efforts in the United States.  (Id. ¶¶ 12, 14.)  The Ramos Brothers only learned about Itaú BBA's and Itaú USA's involvement in the follow-on offering after they had signed the Kabum deal.  (Id.)

        Second, Machado—who was the Itaú BBA managing director in charge of the Kabum deal—had close personal ties to Magazine Luiza's CEO, Frederico Trajano.  The two were brothers-in-law (their wives were sisters) and, allegedly, "best friends."  (Id. ¶ 17.)  During meetings in connection with the Kabum deal, however, Machado and Trajano "acted as if they had only a distant familiarity."  (Id.)  Machado had also advised Trajano and Magazine Luiza informally on the acquisition of another e-commerce company, Netshoes, in June 2019, just months before the Ramos Brothers engaged Itaú BBA to sell Kabum.  (Id.)

        Third, Applicants allege that Itaú BBA and Magazine Luiza had additional prior financial relationships.  Itaú BBA and Magazine Luiza participated in a joint financial venture called Luizacred, through which Itaú BBA exclusively financed Magazine Luiza's credit card purchases.  (Id. ¶ 18.)  Magazine Luiza also acted on Itaú BBA's behalf for banking correspondent services.  (Id. ¶ 19.)  Under the correspondent services agreement, Magazine Luiza offered Itaú BBA financial products at nearly 1,500 physical stores.  (Id.)  Itaú BBA had also advised Magazine Luiza on Magazine Luiza's 2011 initial public offering and 2019 follow-on offering.  (Id. ¶ 14.)

Finally, the Ramos Brothers allege that, during the solicitation of a buyer for Kabum, Itaú BBA impeded deals with other potential buyers in order to steer the transaction towards Magazine Luiza. (Id. ¶ 10.) For example, the Ramos Brothers allege that Itaú BBA falsely told another potential buyer that Kabum was no longer interested in a sale. (Id.)

The Brazilian Proceedings

The Ramos Brothers have commenced two proceedings in Brazil in connection with their claims of conflicts of interest and breach of fiduciary duties.

First, the Ramos Brothers initiated an "Early Production of Evidence" action, seeking documents from Itaú BBA and deposition testimony from Machado and Trajano. (Id. ¶¶ 22, 24.) On May 29, 2023, the trial court ordered Itaú BBA to produce certain documents,[2] but denied the Ramos Brothers' request for other documents[3] and the request for depositions. (Id. ¶ 25; see also docket entry no. 3-6 at 4-5.) Machado and Itaú BBA appealed. (Neto Decl. ¶ 26.) On appeal, Itaú BBA argued that, because Itaú USA is a "separate legal entity that cannot be confused with the appellant [Itaú BBA]," "Itaú [BBA] cannot be required to" produce

---

[2] The trial court compelled the production of "contracts entered into between Itaú BBA and Magazine Luiza, as well as information on the amount that Magazine Luiza paid to Itaú BBA and Itaú BBA USA in [the follow-on offering]" and "all electronic or physical communications that Itaú BBA exchanged with Magazine Luiza and other bidders, through any of its representatives, regarding the sale of Kabum, between 2019 and 2021, to demonstrate whether there was similar treatment to the proposals of all interested parties, or not." (Docket entry no. 3-6 at 4.)

[3] The trial court denied the Ramos Brothers' request for "all internal electronic communications between the Itaú BBA financial advisors responsible for advising the Plaintiffs on the sale of Kabum (Ubiratan Machado, Eduardo Brunetti and Thiago Costa Maceira), and the members of the Itaú BBA team responsible for carrying out the follow-on of Magazine Luiza[.]" (Docket entry no. 3-6 at 4.)

The Ramos Brothers also sought the production of a breakdown of all payments made by Itaú BBA or Itaú USA to Machado in 2021 and 2022. (Nunes Decl. ¶ 20.) The trial court did not rule on that request. (Id.)

documents that are "not its own[.]"[4]  (Docket entry no. 3-7 ¶ 20.)  On June 20, 2023, the appellate court stayed the trial court's judgment pending appeal.  (Nunes Decl. ¶ 23.)

On October 25, 2023, upon discovering further evidence of Machado's and Itaú BBA's alleged conflicts of interest, the Ramos Brothers renewed their request for depositions.  (Id. ¶ 25; Neto II Decl. ¶ 16.)  On October 31, 2023, the trial court denied the request.  (Nunes Decl. ¶ 26; see also docket entry no. 19-1 at 2.)  Subsequently, the Ramos Brothers appealed.  (Nunes Decl. ¶ 27.)

On October 31, 2024, the appellate court ruled on the parties' appeals in the "Early Production of Evidence" action, overturning the lower court and dismissing the Ramos Brothers' request for early production of evidence in its entirety.  (See docket entry no. 23-2. at 18.)

Second, the Ramos Brothers initiated a "Judicial Protest" action against Machado, seeking to put third parties on notice that the Ramos Brothers intended to seek damages from Machado and seeking to enjoin Machado from disposing of his assets.  (Neto Decl. ¶ 27.)  On October 29, 2023, the trial court granted the former relief but denied the latter.  (Id. ¶ 29; see also docket entry no. 3-8 at 4.)  Machado appealed, and on November 7, 2023, the appellate court stayed the trial court's judgment pending appeal.  (Neto Decl. ¶ 30.)  The appellate court has not yet ruled on this appeal, and the trial court's judgment remains stayed.  (Id. ¶ 31.)

---

[4]   Specifically, Itaú BBA protested the trial court's order that Itaú BBA be required to produce the "Placement Facilitation Agreement entered into between Magazine Luiza and Itaú [] USA."  (Docket entry no. 3-6 at 4; see also docket entry no. 3-7 ¶ 20.)

D<small>ISCUSSION</small>

The Ramos Brothers seek an order under 28 U.S.C. section 1782 authorizing a subpoena to produce documents from and a subpoena for a deposition of Itaú USA. The two subpoenas, which are substantively identical, seek discovery on seven different topics. (Docket entry nos. 4-2, 4-3.)

In order to obtain discovery under 28 U.S.C. section 1782, the applicant must meet three statutory requirements: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." Mees v. Buiter, 793 F.3d 291, 297 (2d Cir. 2015) (quoting Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 80 (2d Cir. 2012)).

"Once those statutory requirements are met, a district court may grant discovery under § 1782 in its discretion." Id. In exercising this discretion, the Court must take into consideration the "'twin aims' of the statute, namely, 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P., 798 F.3d 113, 117 (2d Cir. 2015) (quoting In re Metallgesellschaft AG, 121 F.3d 77, 79 (2d Cir. 1997)). The Supreme Court has identified four factors—the so-called Intel factors—to guide this analysis: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or

agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264-65 (2004).

The Court considers the statutory requirements and the Intel factors in turn. For the reasons explained below, the document subpoena is authorized in part and denied in part and the request for approval of the deposition subpoena is denied without prejudice.

The Statutory Requirements

There is no dispute over the first or third statutory requirements. Itaú USA "resides" and can be "found" in this District because its principal place of business is in Manhattan. (Docket entry no. 4-1 at 4 (Itaú USA describing its "Main Office Location" as Manhattan)); In re del Valle Ruiz, 939 F.3d 520, 528 (2d Cir. 2019) (holding that "§ 1782's 'resides or is found' language extends to the limits of personal jurisdiction consistent with due process"). The Ramos Brothers are "interested person[s]" because they have already brought actions against—and contemplate future actions against—Itaú BBA and Machado. Intel, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782[.]").

The parties dispute whether the second statutory requirement—intended use in a foreign proceeding—is satisfied. Itaú USA argues that the sought-after discovery is not "for use in a foreign proceeding," but is rather for "us[e] against Itaú USA in domestic litigation." (Itaú USA Mem. at 14.) This argument fails. First, Itaú USA has not shown that the Ramos Brothers intend to use the sought-after discovery against Itaú USA in domestic litigation. Infra pp. 9-10. Indeed, the Ramos Brothers have agreed to the entry of a protective order that prohibits such use.

Id. Second, as a statutory matter, this "Court does not read into the 'for use' prerequisite a categorical restriction on requesting material that may also be 'for use' in a domestic proceeding." In re Associacao dos Profissionais dos Correios, No. 22-MC-132-RA, 2024 WL 4299019, at *4 (S.D.N.Y. Sept. 25, 2024) (emphasis in original). "Accordingly, that requested material may be 'for use' in a U.S. proceeding against [Itaú USA] does not mean it is not also 'for use' in the Brazilian proceeding." Id.

Arguing that the requests are overly broad, Itaú USA contends that they exceed the bounds of the statutory concept of "for use" in the requisite type of proceeding. This argument fails. As employed in the statute, the term "for use" means "something that will be employed with some advantage or serve some use in the proceeding." In re Accent Delight Int'l Ltd., 869 F.3d 121, 132 (2d Cir. 2017) (quoting Mees v. Buiter, 793 F.3d 291, 298 (2d Cir. 2015)). The Ramos Brothers' discovery requests meet this low threshold because the sought-after discovery is relevant to the Ramos Brothers' allegations that Itaú BBA and Machado had conflicts of interest and breached their fiduciary duties. See In re Refineria de Cartagena S.A.S., No. 23-MC-455-JPC, 2024 WL 95056, at *7 (S.D.N.Y. Jan. 8, 2024) (describing burden imposed on the applicant as "de minimis"); In re Atvos Agroindustrial Investimentos S.A., 481 F. Supp. 3d 166, 175 (S.D.N.Y. 2020) (same); infra pp. 11-16 (discussing relevance).

The Intel Factors

The Court now turns to the Intel factors. Itaú USA contends that the third and fourth factors disfavor the Ramos Brothers' application. The Court finds that the third factor favors the Ramos Brothers, and further finds that, in consideration of the fourth factor, Request Nos. 2, 3, 4, and 6 are appropriate as-is, but that Request Nos. 1, 5, and 7 need to be narrowed.

### The Third Intel Factor

With respect to the third Intel factor, Itaú USA argues that the Ramos Brothers' application is a "pretextual, 'veiled attempt to circumvent the United States' prohibition on most pre-suit discovery." (Ramos Mem. at 14 (quoting In re Associacao dos Profissionais dos Correios, No. 22-MC-132-RA, 2024 WL 4299019, at *4 (S.D.N.Y. Sept. 25, 2024)).)  Itaú USA points to the Ramos Brothers' proffer of a standstill agreement to enable further discovery negotiations, the Ramos Brothers' unwillingness to disclaim any intention at all—or ever—of bringing any claim against Itaú USA in domestic litigation, and, bizarrely, a New Yorker cartoon of an eager lawyer that hangs in the office of the Ramos Brothers' counsel.  (Itaú USA Mem. at 14-15, 31.)  Itaú USA asks the Court to infer that the Ramos Brothers' primary intent is to pursue domestic litigation, but its proffers are insufficient to support its contention of pretext.  Cf. Correios, 2024 WL 4299019, at *4 (denying section 1782 application where the section 1782 applicant's "public statements and fundraising demonstrate its intent to sue [the party from whom discovery was sought] in the United States"); In re Postalis, No. 18-MC-497-JGK, 2018 WL 6725406, at *4 (S.D.N.Y. Dec. 20, 2018) (denying section 1782 application because "[g]iven [the section 1782 applicant's] public statements that this application is an attempt to gain pre-litigation discovery for a prospective lawsuit in the United States, [the applicant's] assertions that the requested discovery is for use in the Brazilian proceedings are not credible").

In any event, the Ramos Brothers have agreed to a protective order that any disclosed information will be "solely for use in connection with pending or future proceedings in Brazilian courts by the Ramos Brothers against Itaú BBA, Ubiratan Machado, Magazine Luiza S/A (and affiliates of Magazine Luiza S/A), and Kabum Comércio Eletrônico S/A." (Docket entry no. 20-1 ¶ 2.)  This protective order is sufficiently protective of Itaú USA, especially

considering the Court's narrowing of overbroad discovery requests.[5]  See infra pp. 11-16 (narrowing overbroad requests).  Accordingly, Itaú USA will not be obligated to produce documents in response to the approved subpoena until a protective order in substantially the form proposed at Docket Entry No. 20-1 has been submitted to and entered by the Court.

        Itaú USA also argues that the Ramos Brothers' application circumvents the discovery orders issued by the Brazilian courts.  The Brazilian discovery orders, however, do not address discovery against Itaú USA, which is the focus of the Ramos Brothers' application here—indeed, Itaú USA was not even a party to the Brazilian proceedings.

        Finally, Itaú USA argues that the Ramos Brothers' discovery requests improperly require Itaú USA to produce materials relating to Itaú BBA and Machado.  (Itaú USA Mem. at 20.)  According to Itaú USA, these materials should be sought from Itaú BBA and Machado in Brazil, rather than from Itaú USA here, because discovery that is "equally available in both foreign and domestic jurisdiction" is "duplicative" or "vexatious[]."  In re Metallgesellschaft AG, 121 F.3d 77, 79 (2d Cir. 1997).  The discovery the Ramos Brothers request from Itaú USA, however, cannot necessarily be obtained from Itaú BBA and Machado.  While some topics

---

[5]  This case is distinguishable from In re Postalis and In re Associacao dos Profissionais dos Correios, both of which held that "a protective order is not an effective remedy for an overbroad discovery request that is searching for whether to bring a lawsuit in the United States" because "[t]he results of the discovery request can shape the decision whether to bring such a lawsuit and thereafter the types of documents to seek, even if the documents that are produced in response to the § 1782 application are never actually used in the United States lawsuit."  Postalis, No. 18-MC-497-JGK, 2018 WL 6725406, at *4 (S.D.N.Y. Dec. 20, 2018); Correios, No. 22-MC-132-RA, 2024 WL 4299019, at *4 (S.D.N.Y. Sept. 25, 2024) (quoting Postalis for the same).  Here, Itaú USA has proffered insufficient evidence to support its contention that this Application is an attempt to circumvent the United States' prohibition on pre-suit discovery.  See supra p. 9.  Furthermore, the Court has narrowed those discovery requests that are overbroad.  See infra pp. 11-16 (narrowing overbroad requests).

overlap, the material produced by Itaú USA will not necessarily be identical to that produced by Itaú BBA and Machado.  For example, an email between Itaú USA and Itaú BBA may be present in the former's production but not the latter's.  The Ramos Brothers seek discovery from Itaú USA to ensure that they can obtain comprehensive information about core elements of their claims against Itaú BBA.

### The Fourth Intel Factor

The fourth Intel factor considers whether the request is otherwise "unduly intrusive or burdensome."  "[T]he ultimate question of burdensomeness is within the district court's discretion to decide," and burdensomeness is assessed "by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."  Frasers Grp. PLC v. Stanley, 95 F.4th 54, 59 (2d Cir. 2024).  "[T]he scope of discovery is limited to relevant material that is proportional to the needs of the case . . . and whether the burden or expense of the proposed discovery outweighs its likely benefit, among other factors."  In re Ex parte Klein, No. 23-MC-211-PAE, 2023 WL 8827847, at *12 (S.D.N.Y. Dec. 21, 2023) (internal quotations omitted).  "Proportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate."  Vaigasi v. Solow Mgmt. Corp., 11-CV-5088-RMB-HBP, 2016 WL 616386, at *14 (S.D.N.Y. Feb. 16, 2016).

The Court applies these principles to each of the Ramos Brothers' discovery requests.

### The Deposition Subpoena

The Ramos Brothers seek to depose Itaú USA on seven topics, which are the same topics on which they seek document discovery.  (Docket entry no. 4-3.)  The request for a

deposition is denied because it is unduly burdensome and excessive at this early stage, where document production has not even yet begun.  See Cordero v. City of New York, No. 15-CV-3436-JBW-CLP, 2017 WL 6375739, at *3 (E.D.N.Y. Dec. 13, 2017) (noting that "the content of the depositions will depend in part on the documents received").  Approval of the deposition subpoena is denied without prejudice to renewal after some document discovery has been obtained and reviewed.

Document Subpoena Request No. 1

Request No. 1 asks for all "All Documents and Communications concerning any offering of Magazine Luiza securities (including, for the avoidance of doubt, American Depository Receipts ('ADRs')) to United States or non-U.S. investors, whether by Itaú USA or any other Person."  (Docket entry no. 4-2 at 14.)

Itaú USA objects that the term "any offering of securities" is overbroad, and that any discovery should focus on the 2021 follow-on offering that occurred in connection with the Kabum transaction.  The Ramos Brothers, however, have alleged that Itaú BBA advised Magazine Luiza on its IPO in 2011 and another follow-on offering in 2019.  Evidence relating to these transactions, as well as "any [other] offering of securities," is relevant to the issue of Itaú BBA's conflicts of interest.  Next, Itaú USA contends that the term "any other Person" is overbroad.  The Court agrees, because Applicants' definition of "Person" is expansive.[6]

---

[6] "Person(s)" "shall mean any natural person or legal entity, including a corporation, partnership, proprietorship, group, association, organization, business entity, governmental body, agency, or trust, and its predecessors, successors or current and former parents, subsidiaries, affiliates, partners, officers, directors, employees, representatives, agents (including attorneys, accountants, and investment or other advisors), or any other Person or entity acting, or purporting to act, on its behalf." (Docket entry no. 4-2 at 9.)

Accordingly, the Court strikes "or any other Person" and directs Applicants to replace it with ", Itaú BBA, or any entity related to either."  Finally, Itaú USA contends the term "[a]ll Documents and Communications" is overbroad and should be replaced with a "sufficient to show" standard.  The objection is overruled because the request seeks materials that are highly relevant to the Ramos Brothers' claims, and because Applicants have represented that they will meet and confer to negotiate reasonable search parameters.  (See Ramos Reply at 10, 13.)

Document Subpoena Request No. 2

Request No. 2 asks for all "All Documents and Communications concerning when the following entities were engaged to advise Magazine Luiza in connection with any offering of securities (including, for avoidance of doubt, ADRs) during the Relevant Period: a. Itaú USA[;] b. Itaú BBA[;] c. Ubiratan Machado."  (Docket entry no. 4-2 at 14.)

Itaú USA makes the same objections to the terms "any offering of securities" and "[a]ll Documents and Communications."  Those objections are meritless because, as noted above, Itaú BBA advised Magazine Luiza on its IPO in 2011 and another follow-on offering in 2019 and because the relevance of the requested information outweighs the burdens of its production.  Itaú USA also argues that the Ramos Brothers are requesting that it be directed to produce information "relating to entities and individuals not under its legal or practical control," namely, Itaú BBA and Machado.  (Itaú USA Mem. at 25.)  This objection is misplaced.  As worded, the request only seeks materials within Itaú USA's possession, custody, or control that concern the two Itaú entities or Machado.  Itaú USA has proffered no logical reason why it should not be obligated to produce such relevant information that is in its possession.  Finally, Itaú USA argues that the "request is not limited to securities offerings by Magazine Luiza; in other words, it would compel production of documents bearing on advice provided to Magazine

Luiza in connection with offerings by entirely separate entities." (Itaú USA Mem. at 25.) This argument fails because such evidence would be relevant to establishing financial relationships between Magazine Luiza and Itaú BBA and because the request is narrowly tailored to materials "concerning <u>when</u> the following entities were engaged to advise Magazine Luiza," as opposed to the contents of the advice. (Docket entry no. 4-2 at 14 (emphasis added).)

Document Subpoena Request No. 3

Request No. 3 asks for all "All Documents and Communications concerning Itaú USA's disclosures to investors (whether United States persons or otherwise) or any regulatory or enforcement agency (in the United States or otherwise) concerning any offering of securities, including ADRs, by Magazine Luiza." (Docket entry no. 4-2 at 14.)

First, this request seeks evidence that is relevant to the issue of Itaú BBA's conflicts of interest because Itaú USA may have referenced its or its affiliates' prior engagements with Magazine Luiza in these disclosures. The broad geographic scope ("United States . . . or otherwise") is also appropriate because the Itaú conglomerate is international in scope. Finally, the request for "[a]ll Documents and Communications" is not overbroad given the relevance of the materials.

Document Subpoena Request No. 4

Request No. 4 seeks "Documents and Communications sufficient to show any financial interest (including through securities, such as ADRs, or otherwise) held in Magazine Luiza by: a. Itaú USA[;] b. Itaú BBA[;] c. Ubiratan Machado." (Docket entry no. 4-2 at 15.)

This request seeks material relevant to the issue of the financial relationships among the Itaú family of companies, Machado, and Magazine Luiza. Itaú USA's financial interests in Magazine Luiza bear on Itaú BBA's alleged conflicts because the two companies are

part of the same conglomerate.  This request is also already narrowed to those materials "sufficient to show[.]"

Document Subpoena Request No. 5

Request No. 5 asks for all "All Documents and Communications concerning any purchase or sale of any financial interest (including securities such as ADRs, or otherwise) in Magazine Luiza interest(s), for each year from 2018 to the present, for the following Persons: a. Itaú USA[;] b. Itaú BBA[;] c. Ubiratan Machado."  (Docket entry no. 4-2 at 15.)

The Ramos Brothers have agreed to replace the request for "All Documents and Communications concerning" with a request for those "sufficient to show."  (Ramos Brothers Reply at 9 (citing docket entry no. 15-7 at 3-4).)  Request No. 5, as modified, is proper for the same reasons as Request No. 4.

Document Subpoena Request No. 6

Request No. 6 asks for all "All Documents and Communications concerning the role of each of the following Persons in advising Magazine Luiza on its acquisition of Netshoes Ltd. in 2019. a. Itaú USA[;] b. Itaú BBA[;] c. Ubiratan Machado."  (Docket entry no. 4-2 at 15.)

This request seeks relevant evidence.  It bears on the financial relationship between Magazine Luiza and the Itaú companies—as well as Machado.  Furthermore, because Machado advised Magazine Luiza on acquiring an e-commerce company just a few months before he advised the Ramos Brothers on selling their e-commerce company to Magazine Luiza, Machado may have learned confidential information about Magazine Luiza's acquisition strategies.  Machado would have been expected not to use this information against Magazine Luiza when he subsequently represented the Ramos Brothers, thus impairing his ability to

represent the Ramos Brothers effectively. Finally, the request for "[a]ll Documents and Communications" is proper because the relevance outweighs the burdens.

Document Subpoena Request No. 7

Request No. 7 seeks all "All Documents and Communications concerning Magazine Luiza's stock price in 2021." (Docket entry no. 4-2 at 15.)

This request is overbroad. It would encompass discussions about how the 2021 follow-on offering would affect Magazine Luiza's stock price and the consideration received by the Ramos Brothers, but also potentially innocuous discussions about how the stock price had fallen or risen for reasons unrelated to the follow-on offering. As worded, the request has no limiting principle, and the Ramos Brothers offer none besides suggesting "running keywords (or a further narrowing of the date limitation)." (Ramos Brothers Reply at 10.)

Itaú USA has proposed to narrow the request to "documents sufficient to show whether Itaú USA discussed the effect, if any, of the Magazine Luiza follow[-]on offering on (1) the terms of the Kabum sale; and (2) the value of the equity proceeds the Ramos Brothers would receive from the sale." (Itaú USA Mem. at 28.) Itaú USA's proposal is appropriate, with one modification—Applicants are directed to replace the term "documents sufficient to show" with the term "all Documents and Communications concerning." The relevance of the material targeted by the amended, narrower request outweighs the burdens of search and production.

CONCLUSION

For the foregoing reasons, the Ramos Brothers' application is granted in part and denied in part. The request for a deposition subpoena is denied without prejudice to renewal following the production of responsive documents. The request for a document subpoena is granted in part and denied in part—Request Nos. 2, 3, 4, and 6 are appropriate as-is; Request

Nos. 1, 5, and 7 shall be modified as described above.[7]  The Court also directs the parties to finalize and submit a proposed protective order substantially in the form of the proposal at Docket Entry No. 20-1.  The parties shall meet and confer concerning production scope and methodology with the aim of minimizing the burden of the discovery while enabling the Ramos Brothers to obtain complete and meaningful responses to their requests as modified.  Further disputes relating to the Ramos Brothers' requests are referred to Magistrate Judge Moses.  The parties are also directed to file a joint status report within 45 days of entry of this Memorandum Order.

SO ORDERED.

Dated: New York, New York
         February 18, 2025

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

---

[7]  Request No. 1 shall be amended to read: "All Documents and Communications concerning any offering of Magazine Luiza securities (including, for the avoidance of doubt, American Depository Receipts ('ADRs')) to United States or non-U.S. investors, whether by Itaú USA, Itaú BBA, or any entity related to either."

Request No. 5 shall be amended to read: "Documents and Communications sufficient to show any purchase or sale of any financial interest (including securities such as ADRs, or otherwise) in Magazine Luiza interest(s), for each year from 2018 to the present, for the following Persons: a. Itaú USA[;] b. Itaú BBA[;] c. Ubiratan Machado."

Request No. 7 shall be amended to read: "All Documents and Communications concerning whether Itaú USA discussed the effect, if any, of the Magazine Luiza follow-on offering on (1) the terms of the Kabum sale; and (2) the value of the equity proceeds the Ramos Brothers would receive from the sale."